Aultman, Miller & Co. v. Adams & Sherlock.

AULTMAN, MILLER & Co., Appellants, v. ADAMS & SHERLOCK, Respondents.

Kansas City Court of Appeals, April 15, 1889.

1. **Witnesses :** ONE PARTY INCOMPETENT BY REASON OF THE DEATH OF THE OTHER'S AGENT. In an action between a corporation and a partnership it is error to permit one of the partners to testify to what occurred between said witness and the deceased agent of the corporation in relation to a settlement.

2. **Attorney and Client:** RULE AS TO LIMITATION IN CASE OF COLLECTION. It is the duty of an attorney making a collection to pay it over at once and an action lies therefor and the statute of limitation, in the absence of fraudulent concealment, begins to run from the time the right of action accrues ; but where, as in this case, more than five years elapsed between the collection and the commencement of suit therefor by the client, the conduct of the attorneys, whether fraudulently or in good faith by silently admitting the claim, still uncollected, was calculated to mislead the plaintiff, and saves the collection from the statutory bar.

*Appeal from the Jackson Circuit Court.*—HON. J. H. SLOVER, Judge.

REVERSED AND REMANDED.

Statement of facts.

At the date herein mentioned, the plaintiff corporation was engaged in a manufacturing business at Akron, Ohio, and defendants were, until 1879, attorneys at Pleasant Hill, Missouri. It was, it seems, about this time that defendant Adams came to Kansas City, and defendant Sherlock went to reside in Kansas. In the years 1877-8 plaintiff gave into the hands of defendants at Pleasant Hill for collection various claims, among which was one against one O'Connell for about the sum of one hundred dollars. Collections from time to time were

made by these attorneys, and remittances had to plaintiff. On September 20, 1878, plaintiff's general agent, Rhodes, visited defendants' office at Pleasant Hill, and there had a settlement with defendant Sherlock (for the firm of Adams and Sherlock), which included all the collections made to that time, but said attorneys retained some four or five "slow" or "doubtful" claims for future treatment, among which was the O'Connell claim, and which defendants then reported to the plaintiff as "doubtful." It seems to have been the understanding that defendants should remit collections as made, deduct ing therefrom their commissions for such services, and it seems this was done, unless with the single exception of the O'Connell claim.

Adams & Sherlock, attorneys, sued on the O'Connell claim, and on November 21, 1879, recovered judgment at Pleasant Hill, and of this judgment Sherlock testifies he gave plaintiff notice.

The defenses interposed by defendants were—settlement September 20, 1878 and statute of limitations of five years. The cause was submitted to the court without a jury and a judgment for defendants.

Plaintiff appeals and relies on two grounds. (1) That defendant Sherlock was permitted to testify as to what occurred between himself and Rhodes, plaintiff's agent, in regard to the adjustment of the accounts in September, 1878, it being shown at the trial that Rhodes was then dead, and (2) that the court below erred in holding plaintiff was barred by the statute of limitations as to the O'Connell claim. .

Such further facts, as are necessary to an understanding of the case, appear in the opinion.

*Robinson & Harkless*, for appellants.

The testimony of Eli J. Sherlock, as to the settlement, was not admissible. The supreme court of this

state have recently passed upon this exact point, holding that the statute, prohibiting one party from testifying where the other is dead, applies to the agent of a corporation. *Williams v. Edwards*, 7 S. W. Rep. 429. On the question of the statute of limitations, the following proposition is sustained by the weight of authority, viz: "That the statute of limitations, against a claim on an attorney for money collected for his client, begins to run from the time the client has knowledge, or reasonable means of knowledge, that the money has been collected, and the burden of proving such knowledge is on the attorney, who stands in a fiduciary character; and before he can be permitted to avail himself of this defense, he must prove that he has performed his duty; that duty, is to give his client notice of the fact that he has collected the money, and the attorney cannot be protected where he has failed to give such notice, until a demand is made; and if the wrong of the attorney causes a delay in bringing the action, and not the laches of the plaintiff, he cannot take advantage of his own wrong, and plead the statute of limitations. Weeks on Attorneys, sec. 203, p. 445; *McDowell v. Potter*, 8 Barr. 189; *State ex rel. v. Dailey*, 4 Mo. App. 172; 7 Wait's Act. and Def., p. 238, sec. 11; *McClurey v. Hill*, 7 Mo. App. 579; *Claypool v. Gish*, 9 N. E. Rep. 382; *Beardslee v. Boyd*, 37 Mo. 180.

*T. B. Buckner*, for respondents.

(1) The appellate court will not review the findings of fact by the trial court. This principle is too well settled to require citation of authorities. (2) The undisputed evidence in the case shows that a final settlement was had—between plaintiffs' agent Rhodes, and defendant Sherlock, on the twentieth day of September, 1878, and this must have been found by the trial court.

(3) Assuming that the court erred in receiving the testimony of defendant Sherlock (agent Rhodes being dead), which position is not sustained by the authority cited by appellant, still said error is harmless, as the same fact is established by the uncontradicted evidence of the witness, Wiliam L. Jarrott.    (4) The settlement having been made eight years before the bringing of this suit, the statute of limitations is a complete bar.    R. S. 1879, sec. 3230.    (3) There is no foundation in the record for the pretense, that respondent Adams was guilty of any fraud or concealment whereby the statute would cease to run, and the court trying the case made no such finding, on the issue of fact, and hence the authorities cited by appellant cannot apply to this case.

GILL, J.—I.    The circuit court should have sustained the objection to the evidence of defendant Sherlock, as to what occurred between said witness and the deceased agent, Rhodes, in relation to the adjustment, or settlement, in September, 1878.    In the admission of such evidence the court committed error.    R. S. 1879, sec. 4010 ; *Williams v. Edwards*, Sup. Ct. of Mo. 7 S. W. Rep., p. 429.

II.    In the matter of the bar of the statute of limitations, claimed by the defendants, there are several points for consideration.    In their brief, the defendants seem to place special reliance in the fact that the settlement of September 20, 1878, was more than eight years before the institution of this suit, and that as the statute fixes five years as a bar plaintiff ought not to recover.

But it must be borne in mind that the settlement had September 20, 1878, only included matters to that date, and had no reference to the future liabilities of Adams and Sherlock for moneys they might thereafter collect.    The evidence is undisputed that the O'Connell claim was not collected by these attorneys till in 1881.

Nor is there any evidence in the record even tending to show a payment of this collection over to the plaintiffs. The defense interposed to that item is that the action accrued to the plaintiff more than five years before the same was begun. The O'Connell judgment was rendered in November, 1879, and was paid to these defendants July 21, 1881.

This suit was begun December 23, 1886, five years and five months after such collection by the defendants. The question is, was the plaintiff barred of its action by failing to institute the same for more than five years after the attorneys made the O'Connell collection ?

Counsel for plaintiff, in their brief and argument, urge that before the statute of limitations can be successfully invoked by an attorney to protect him from the demand of a client for money collected, and not paid over, the attorney must show notice of the collection to the client or knowledge thereof, and that the statute will only begin to run from such notice or knowledge. Reliance, for this contention, is had on the oft quoted opinion in *McDowell v. Potter*, 8 Barr. 189, where it is held (as stated in the syllabus) "that the statute of limitations begins to run against a claim on an attorney for money collected for a client, from the time the client has notice, or means of knowing, of the receipt of the funds," etc.

While this case has been followed in some instances, we think an examination of reported cases will display a large preponderance of authority against the holding as above quoted. It has been materially modified, if not expressly overruled, by the identical court which originally announced it. In *Campbell's Adm'r v. Boggs*, 48 Pa. St. 524, there was a thorough review of the question, and it was held, "that an attorney who collects money for his client is bound to pay it over at once, and his neglect to do so constitutes a breach of an implied contract for which an action will lie. That the

statute of limitations begins to run from the time the right of action accrues, and not from the time when notice is given of the receipt of the money, unless there had been fraudulent concealment on the part of the attorney." See also: *Rhines' Adm'r v. Evans*, 66 Pa. St. 195, and cases cited in opinion. *Campbell v. Boggs*, *supra*, p. 526, also 83 Pa. St. 308, etc.

So that we conclude that, as this O'Connell collection was made more than five years before this action was brought, the plaintiff is barred by the statute from maintaining the same, *unless* saved from the operation of the statute by the conduct of these defendants.

Although the general rule seems to be, that the statute of limitations will begin to run from the time of the collection, and failure to remit or pay over, and although it is made the duty of the client to enquire as to the condition of such business, etc., yet if the attorney shall, by evasive answers, or otherwise, so conduct himself as to throw the client off his guard, and cause him to believe such collection has never, in fact, been made, and the client shall thereby be induced to forego his action until limitation shall have apparently barred the suit, then the statute will be arrested and will only run from the time the truth is discovered. Wood on Lim., sec. 18 and authorities cited; Angell on Lim. (6 Ed.) p. 184, note 1; *Morgan v. Tener*, 83 Pa. St. 305; *McCoon v. Galbraith*, 29 Pa. St. 293; *Campbell's Adm'r v. Boggs*, *supra*, etc.; *Wickersham v. Lee*, 83 Pa. St. 416.

It is decided, too, that actual fraud by the attorney is not necessary to be shown, but it is held to be the duty of the attorney entrusted with the collection "to give full and proper information to the client who has no other means of knowledge, and therefore if the client calls from time to time within the time of the running of the statute of limitations, and receives from the attorney information by which he is mislead, the statute of

limitations does not bar his action before knowledge of the receipt of the money by such attorney." *Wickersham v. Lee, supra,* p. 421.   See also *McCoon v. Galbraith, supra,* p. 295, a case in its essential "features quite parallel to the one at bar.   In that case an attorney, one of a firm, collected money for their clients and did not pay it over.   Several years afterwards, less than six years before the commencement of the suit, the other member of the firm wrote to the clients, expressing ignorance of the affairs, but promising to inform them further. Held, that being one of the firm he was chargeable with the knowledge of the previous collection and therefore that such attorney must be treated as not revealing it when called upon, but promising so to do, and not until then, at least, could the statute of limitations begin to run."   The limitation in Pennsylvania, where the case referred to was tried, was six years on such actions. Now, in view of the foregoing principles, let us apply the rules to the facts of the case at bar.

We confine our attention to the O'Connell claim, as it is admitted that all others have been accounted for by the defendants.

It was on July 21, 1881, that defendant Adams received $110.70, payment of the O'Connell judgment, and it was a few years prior thereto that defendant Sherlock wrote to the plaintiff at Akron, Ohio, that this O'Connell claim was bad, or "doubtful."   There is no evidence showing payment over of this collection to plaintiff—whatever the truth may be.   Defendant Adams did not testify at the trial, and defendant Sherlock admitted that a judgment was secured against O'Connell, but testified that *he* never received anything on the judgment.

The testimony is undisputed that in the fall of 1885, some four years after collecting the O'Connell claim, one Wernicke, plaintiff's general agent, came to Kansas City and called repeatedly on defendant Adams, for

information, and for settlement, of these old claims and gave, as he said, to said Adams an itemized account of such claims, and among them, as already stated, was the O'Connell matter. Defendant Adams as often stated to witness that he knew nothing of the matter, said that Sherlock had the entire charge of such business, and promised to correspond with Sherlock, who then resided in Kansas, and when he, Adams, was informed as to condition of the claims would settle with plaintiff. Defendant Adams also stated, according to the evidence of witness Wernicke, that the deceased agent, Rhodes, had likewise asked a settlement of such matters.

Nothing satisfactory ever came of these negotiations, however, and plaintiff at last, December 23, 1886, instituted this suit.

The trial occurred May 18, 1887, and defendant Sherlock testified, as already stated, that he had never received anything on the O'Connell judgment.

Plaintiffs, however, at the close of the trial introduced a certified copy of the judgment from the court at Pleasant Hill, with the endorsement on the margin, showing a receipt by defendant Adams on July 21, 1881, of the full amount of such judgment, as hereinbefore stated. This receipt was not denied, nor any explanation offered, although defendant Adams was present at the trial.

Now, we conclude from this showing, that before the statutory period of limitation, plaintiff was misled by the conduct of the defendants, in that its agents were lead to believe that the O'Connell claim was doubtful, was uncollectable, and uncollected, that after the same had been in fact paid to one of the defendants he silently admitted the claim was still *unpaid*, and from such facts we think the trial court should have determined as to the O'Connell claim, adversely to defendant's plea of the statute of limitations, as the conduct of defendants,

whether fraudulently or in good faith in fact, was such as to save the O'Connell collection from the statutory bar.

We take it, that, as the court below held the claim barred by the lapse of time, defendants thought it unnecessary to introduce any proof, explanatory, or perhaps *contradictory*, of the matters shown by plaintiff to relieve the operation of the statute, and hence the entire harmony of plaintiff's testimony in that regard. In arriving at a determination of the case we have settled no conflicts of evidence, nor sought in any way to intrude into the peculiar province of the trial court. But have only aimed, by this decision, to declare the law, as we conceive it, applicable to certain evidence undisputed on the record furnished us.

The judgment of the circuit court is reversed and the cause remanded. The other judges concur.