OLIVER CARDER, Appellant, v. JAMES L. PRIMM, Administrator of the Estate of FRANCIS M. CARDER, Respondent.

St. Louis Court of Appeals, December 20, 1892.

1. **Evidence**: LEADING QUESTIONS. It is within the discretion of the trial court to permit leading questions in the examination of a witness.

2. ————: IMPEACHMENT OF WITNESS: LAYING FOUNDATION. When it is sought to impeach a witness by proof of his prior declarations, inconsistent with his testimony, a foundation must be laid therefor by directing the attention of the witness to such prior declarations, so as to afford him an opportunity to say whether he made them, and to explain them, if made.

3. **Presumptions**: BURDEN OF PROOF. When an indebtedness is once shown to exist, it is presumed to continue unless the contrary is shown. Accordingly, when a collection of money by an agent for his principal is established, there is no presumption that he has paid or accounted for it to his principal.

4. **Principal and Agent**: STATUTE OF LIMITATIONS. With respect to a claim by a principal against his agent for money collected by the latter for him, the statute of limitations does not begin to run until the principal has notice of the collection, and possibly not until demand by him.

*Appeal from the Knox County Circuit Court.*—HON. BEN. E. TURNER, Judge.

REVERSED AND REMANDED.

*Blair & Marchand,* for appellant.

*O. D. Jones* and *L. F. Cottey,* for respondent.

THOMPSON, J.—This case was before this court on a former appeal. 47 Mo. App. 301. The court there decided three propositions: *First.* That the testi-

Carder v. Primm.

mony adduced by the plaintiff to prove the indebtedness of the deceased to the plaintiff, consisting as it did of a certain oral statement admitting the indebtedness, made to a witness several months prior to the death of the deceased, was, though possibly the weakest species of evidence, sufficient to entitle the plaintiff to go to the jury. *Second.* That no error was committed in allowing the defendant's counsel to cross-examine the plaintiff's witness as to conversations had between the witness and third persons in which the witness had spoken of a certain lawyer having an undue influence over the probate judge in preventing the allowance of this claim,—this court being of opinion that this evidence was proper for the purpose of showing the animus of the witness in the prosecution of the claim and his feelings and bias respecting it. *Third.* That the defense of the statute of limitations was unavailing, because not raised in any way upon the record.

The case has now been tried again by a jury, resulting in a verdict and judgment for the defendant, and the plaintiff again prosecutes an appeal to this court. Numerous errors are assigned, but we shall only notice those that seem to possess substantial merit.

The evidence given in support of the claims was substantially the same as on the former trial. It consisted of testimony to the effect that the deceased had, about nine months before his death, ridden on horseback to where the witness was shucking corn in his field, and had there had a conversation with him in which he admitted that he had between $700 and $800 of money belonging to the present plaintiff.

The first witness called on behalf of the defendant was Dr. F. M. Wright, who had lived in Knox county for twenty-seven years, and who was acquainted with the deceased Frank Carder in his lifetime, and also

with his uncle, Oliver Carder, this plaintiff. It was attempted to prove directly by this witness that, in 1872 or 1873, he paid a certain amount of money on two notes, one made to French Carder and the other to Frank Carder, the deceased, and that Frank Carder, the deceased, and French Carder both admitted to him that the money was the property of Oliver Carder, this plaintiff. On objection of the plaintiff's counsel the court ruled out the evidence of these admissions as hearsay. The defendant then attempted to get before the jury evidence of the fact, that the money so paid was the money of Oliver Carder, in the following way: The witness was asked whether he ever had a conversation with the plaintiff about this matter, and he answered that he had. Next came the following colloquium: "*Q.* Did you ever have a conversation with Oliver Carder once, in which he showed you a memoranda *(sic)* on a book against Frank Carder for the sum of $219? (Objected to as leading.)

"By the court: The objection is overruled. (To the said action of the court in overruling the said evidence plaintiff's counsel did then and there object and save exception herein.) *A.* I did.

"*Q.* When and where was that? *A.* It was in Colony, I think.

"*Q.* How long ago? *A.* Over a year ago, and under two years—I don't remember the dates.

"*Q.* Do you remember the purport of the item there, what it was? (Objected to as being illegal and incompetent, and because the book is the best evidence of the fact.)

"*Q.* What did he state in that connection? ·

"By the court: And what he said?

"By Mr. Jones (counsel for the defendant): Yes, sir; what Oliver Carder said in that connection?

"By the court: You state what Oliver said, Doctor. *A.* Oliver Carder said that the note that Frank Carder had on me was $219, and something.

"*Q.* Well, now then, was that the money he said he charged Frank Carder with? (Objected to as being leading.)

"*Q.* Did he have the item of $219 charged against Carder on his books?

"By the court: Was that the amount of the note you paid? *A.* That is the original amount of the note I paid.

"*Q.* Was that the French Carder note? *A.* The French Carder note.

"*Q.* Now then, the fact is the sum you paid to Frank Carder on the French Carder note herein referred to was $219, was it not? (Objected to because the question assumed the fact.)

"*Q.* Now then, at what time, Doctor, did you make the last payment on the French Carder note? *A.* The last payment that I made—(Objected to as being incompetent, irrelevant and immaterial.)

"By the court: The objection overruled. (To the said action of the court in overruling the said question the plaintiff's counsel did then and there object and saved exceptions herein.)

"*Q.* How much? *A.* It says here January 23, 1873. (Plaintiff objected to the note and indorsements thereon in connection with it, because the note and indorsements are the best evidence.)

"By the court: From an examination of that note and the indorsements thereon is your memory refreshed? *A.* Yes, sir; when I read the note my memory is refreshed.

"By the court: Is it now refreshed? *A.* Yes, sir.

"By the court: What is the date? *A.* January 23, 1873. He told me the item on his books was for

the money I paid to F. M. Carder. Plaintiff showed me a book with $219 on it.''

Error is assigned upon the admission of the question against plaintiff's objection: "Did you have a conversation with Oliver Carder once, in which he showed you a memoranda *(sic)* book against Frank Carder for the sum of $219?" As the only objection to the question was on the ground that it was leading, and, as it is within the discretion of the trial court to permit leading questions, this assignment of error presents nothing for review. If the plaintiff desired to have parol evidence of the contents of the supposed "memoranda book" excluded on the ground that the book itself was the best evidence, he should have made his objection on that ground, and then the question would have arisen whether the objection was tenable or not.

The next assignment of error will be best understood if we state that when Dr. Wright, the first witness called for the defendant, was on the stand, undergoing his direct examination, counsel for the defendant asked him whether he had a conversation with Mr. Hume, who, it will be recalled, was the only witness for the plaintiff, with reference to this case, to which Dr. Wright answered that he had had such a conversation with him at Colony perhaps two or three years before. The following question was then asked: "*Q.* Did he say to you in substance that he wanted you to talk to Judge Fowler, the probate judge of this county, about this case, and to try to counteract on the mind of Judge Fowler any influence Mr. Cottey as an attorney in the case might have on his mind—any undue influence? (Counsel for the plaintiff objected to this question 'as being incompetent, irrelevant and immaterial, there being no foundation laid for it.') By the court: The objection overruled. You laid the foundation; you propounded the question to the witness and he admitted

it as being true. (To which plaintiff at the time excepted.)"

Here the matter was dropped, and the succeeding interrogatories directed the attention of the witness to the conversation had between him and the plaintiff, spoken of in the preceding paragraph. The overruling of the plaintiff's objection to the following question in the above colloquium is assigned as error: "Did he [the witness Hume] say to you in substance that he wanted you to talk to Judge Fowler, the probate judge of the county, about this case, and to try to counteract on the mind of Judge Fowler any influence Mr. Cottey, as an attorney in the case, might have on his mind— any undue influence?" As the record does not show that the witness answered the question in the affirmative or in any other way, the assignment of error and the argument built upon it seems to be of no force whatever.

The defendant offered in evidence the testimony of William F. Hume, the only witness for the plaintiff, as preserved in the bill of exceptions taken in the last trial of the case. This was objected to as being incompetent, illegal and immaterial, and "because the counsel for the defendant allege none, nor point out any contradictions made by the witness from the evidence preserved in the bill of exceptions which he now offers to read." The bill of exceptions having been identified, the court overruled the objection, and the plaintiff excepted. The testimony of the witness Hume as preserved in the bill of exceptions at the former trial was then read at length, consisting of twenty pages of transcript. This ruling was erroneous on any conceivable theory. The testimony was not admissible as a deposition, because the witness was present, and had given his testimony and had been cross-examined. *Leeser v. Boekhoff*, 38 Mo. App. 454.

It was not admissible for the purpose of an indirect impeachment on the theory of his having testified at the former trial contrary to his testimony at the present trial, because no foundation had been laid by directing the attention of the witness to his former testimony and allowing him to say whether or not he had made such or such statements in testifying at the former trial, and, if different from his present statements, allowing him the opportunity to explain. "The rule," said Mr. Chief Justice WAITE, "is that the contradictory declarations of a witness, whether oral or in writing, made at another time, cannot be used for the purpose of impeachment until the witness has been examined upon the subject, and his attention particularly directed to the circumstances in such a way as to give him full opportunity for explanation or exculpation, if he desires to make it." *The Charles Morgan*, 115 U. S. 69. Citations could be multiplied indefinitely in support of this statement, but it seems unnecessary, because it is a rule that is understood, or should be, by all lawyers and judges.

We now pass to the instructions, and we must deal with those which were not the subject of exceptions as well as those which were, in order to aid the court and counsel, if we can, in another trial of the cause. At the request of the plaintiff the court gave the following instruction; "1. If the jury believe from the evidence that Homer Harr paid Francis M. Carder in December, 1872, for the plaintiff in this suit, then the law presumes that said Francis M. Carder paid said money in a reasonable time thereafter to plaintiff in the absence of any evidence to the contrary."

We do not understand that there is any such presumption of law. There is a general presumption of right acting on the part of public officials which is sometimes extended to private persons, but it is one of

the weakest presumptions of law, and generally operates merely to shift the burden of proof. We do not understand that it is a presumption that can be dealt out to a jury as evidence on such an issue as was here on trial. The rule of law, as laid down in this case by this court on the former appeal, is to the contrary of this instruction. That rule was that a state of things once shown to exist is presumed to continue until the contrary is made to appear, and that, when indebtedness is shown to exist, it is presumed to continue to be owing until it is made to appear that it has been paid.

The next instruction given on behalf of the plaintiff was a similar instruction, relating to the money which Dr. Wright testified as having paid to the deceased in 1873. We are of opinion that the giving of it should be avoided on another trial for the reason above stated.

The court refused an instruction tendered by the plaintiff with reference to the application of the statute of limitations, and gave an instruction tendered by the defendant. The instruction tendered by the plaintiff and refused was as follows: "Although the jury may believe from the evidence that Francis M. Carder received from Dr. Wright, in A. D. 1873, money for the plaintiff, and that said Francis M. Carder received in December, A. D. 1872, money from Homer Harr for plaintiff, yet the statute of limitations can avail nothing, unless the jury shall believe from the evidence that said Francis M. Carder, or some person for him, informed plaintiff thereof, or that plaintiff had knowledge thereof, five years before this suit was instituted in the probate court of this county; and, if the jury believe that no such notice of such collections was given, and that plaintiff had no knowledge of such collections, then the jury will find for the plaintiff in such sum as the evidence shows said Carder had in his

possession, if any, with interest thereon from the date of the acknowledgment of said Francis M. Carder in October or November, 1886, at the rate of six per cent. per annum."

The instruction on this subject, tendered by the defendant and given, was as follows: "If you find from the evidence in the cause that F. M. Carder, deceased, was in his lifetime the agent of the plaintiff to collect money for him in this state, and that the money sued for in this suit is the money paid to him by the witnesses, Dr. Wright, Harr and others, then an action accrued to plaintiff on the payment of the money to said Carder, deceased, and the statute of limitations of five years commenced to run in his favor immediately on the payment of said money; and, if the evidence shows that more than five years elapsed between the time of the payment of said money to said Carder and his decease in the year A. D. 1887, then the plaintiff cannot recover, and your verdict should be for the defendant."

It is perceived that the proposition of law embodied in the plaintiff's refused instruction is that the statute of limitations does not commence to run against an action by a principal against his agent for the collection of money, until the principal has been notified or has acquired knowledge that the agent has collected the money; whereas the proposition embodied in the defendant's instruction, which was given, is that the statute commenced to run immediately upon the payment of the money to the agent. In giving this instruction the court seems to have proceeded upon the rule laid down by the Kansas City Court of Appeals in *Aultman v. Adams,* 35 Mo. App. 503, as applicable to the case where the collecting agent is an attorney at law. The court there held that, it being the duty of an attorney making a collection to pay it over at once

to his client, an action lies therefor on the part of the client immediately upon the receipt of the money by the attorney, except in case of concealment of the fact by the attorney, and that the statute of limitations begins to run at that date. In so holding the court cited a number of decisions in Pennsylvania, but made no reference to a number of decisions of the supreme court and of this court holding the contrary doctrine in regard to collecting agents generally. In *State ex rel. v. Minor*, 44 Mo. 373, it was held that a right of action on the bond of a sheriff for failing to account for moneys collected by him does not accrue, so as to put in motion the statute of limitations, until there has been either a demand of payment by the parties in interest, or until the officer has made a proper return or report to the court, showing that the money has been realized. In *Kirk v. Sportsman*, 48 Mo. 382, this principle was reaffirmed with regard to a constable in an action on the bond of such an officer. This principle was recognized by Judge LEWIS, in *State to use v. Dailey*, 4 Mo. App. 172, 176, which collects many authorities on the subject. The distinction in that case is carefully taken between the case where there is a continuing trust or bailment, and the case where it is the duty of the agent to pay over the money at once on the fact of collection. The reasoning of that case shows that it is rather the receipt of the notice of the collection which puts the statute in motion, than it is the fact of demand, for the learned judge said: "The principal cannot, by omitting to make the necessary demand, suspend the operation of the statute for an indefinite period. Upon receiving notice of the collection, he must make the requisite demand within a reasonable time; and, if he omit to do so, he puts the statute in motion, nevertheless." At p. 176. In another part of the opinion the learned judge said: "The authorities

are very numerous in which it is held that, in cases of agency simply to collect and pay over, the statute begins to run from demand and refusal." At p. 177. In *McClurg v. Hill*, not reported, but abstracted in 7 Mo. App. 579, this court distinctly held that the statute of limitations begins to run against an attorney, on a claim for money collected for the client, from the time of the latter's knowledge of the collection; and that holding was reaffirmed in *Donahue v. Bragg*, 49 Mo. App. 273. This is in accordance with the rule as laid down in *Beardslee v. Boyd*, 37 Mo. 180, 182, where it was held, using the language of the court, that "to hold an attorney liable for money collected by him as such, there must be a demand and a refusal to pay, or failure to remit according to instructions after a reasonable time." In *Cockrill v. Kirkpatrick*, 9 Mo. 697, a doctrine is announced which would necessarily lead to the conclusion, that the statute of limitations does not begin to run until a demand for payment is made by the principal of his agent; for it is there held that a principal cannot maintain an action against an agent for money collected until demand for the payment of the same is made. So, in *Evans v. King*, 16 Mo. 525, it was held that, where money had been collected from the government by the administrator of a deceased claimant, the person to whom the deceased in his lifetime assigned the claim could not maintain an action against the administrator until demand and refusal of payment. These decisions all tend to the conclusion that, at the very least, in the case of the right of action of a principal against his agent for money collected, the right of action does not accrue, and the statute of limitations does not begin to run, until the principal has notice of the collection, and possibly not until demand made by him, and in no case until demand,

where the agency is in the nature of a continuing trust, as it is in the case of a banker who collects money and holds it on deposit subject to check by his customer.

Now the evidence in this case entirely fails to show the nature and scope of the agency of Francis M. Carder for his uncle, Oliver Carder, this plaintiff. It does not show that it became his duty, on making the collections, to turn the money over immediately to the plaintiff. It does not negative the conclusion, that he may have been permitted to hold it until demand made by the plaintiff. There is no evidence as to the time when, if at all, the plaintiff became apprised of the fact that the collection had been made, except such as is found in the evidence of Dr. Wright in the colloquium which we have already set out, and that evidence related to an interview between the witness and the plaintiff which took place one or two years before the trial. To say the least then, it was necessary for the defendant, in order to invoke the statute of limitations, to show that the plaintiff had knowledge of the fact of the money having been collected more than five years prior to the death of the deceased. The giving of the defendant's instruction above set out, and the refusal of the plaintiff's, was, therefore, prejudicial error. As there is no evidence that Francis M. Carder, the deceased, was an attorney at law, there does not seem to be such a contradiction between our conclusion with reference to the statute of limitations, and the reasoning of the Kansas City Court of Appeals in *Aultman v. Adams*, 35 Mo. App. 503, as requires us to certify this cause to the supreme court under the constitutional mandate or as would produce a conflict of authority between the two courts.

For the ruling admitting in evidence the testimony of the witness Hume at the former trial, and for these

rulings in respect of the statute of limitations, the judgment must be reversed and the cause remanded. It is so ordered. All the judges concur.