HIRAM EMERSON V. CONCEPTION R. NAVÁRRO ET AL.

Mistakes, as well as frauds, are of equitable jurisdiction.

Mistakes of law are always relievable in a court of equity.

Where a party sold a third of a league survey, both parties believing that the survey contained that quantity, but the survey lapped upon an older title, so that there was a failure of title for over two hundred acres, the vendee had the right to recover back the purchase-money in proportion to the loss.

Where there was a mistake as to the quantity of land sold, unmixed with any ingredient of fraud, the statute of limitation did not commence to run until the discovery of the mistake, and the suit was well brought upon the warranty within four years after the discovery of the mistake. (Paschal's Dig., Art. 4604, Note 1017.)

ERROR from Bexar. The case was tried before Hon. THOMAS J. DEVINE, one of the district judges.

This was an action by plaintiff in error against the defendants to recover $2,000 for deficiency in a tract of land

sold by B. Callahan, the ancestor of defendants, to the plaintiff. The tract was sold as a third of a league, and was found to be deficient two hundred and thirty-five acres. Defendants plead limitation of two, four, and six years. The court charged the jury: "Under the defendants' plea of the statute of limitation the presumption must be that the cause of action arose at the time of the sale, and if four years have elapsed between the time of the sale to the plaintiff, the bringing of this suit on the 9th January, 1859, then you must find for the defendant."

The court also refused to give the following instruction asked by the plaintiff: "That plaintiff has four years from the discovery of the conflict in which to sue."

The court also excluded the deposition of G. H. McDaniel, taken by agreement in another suit, for the same matter in controversy, and between the same parties.

*W. B. Leigh,* for plaintiff in error.—I. Courts of equity will correct mistakes in the sale of land where the deficiency is material. (1 Sug. on Vend., ch. 7, sec. 3; Mitchell v. Zimmerman, 4 Tex., 75; 4 Kent's Com., 457; 1 Story's Eq., § 141.) And the statute of limitation does not begin to run until the mistake is discovered. (2 Story's Eq., § 1521a.)

II. Again, the court erred in excluding the deposition of G. H. McDaniel. It was taken by agreement in another suit, wherein there were the same parties and the same matter in controversy. (1 Greenl. on Ev., §§ 553, 554.)

*Moore & Green,* also for plaintiff in error, relied upon Smith v. Fly, 24 Tex., 349; Mason v. Laughlin, 16 Tex., 29; and McDonald v. McGuire, 8 Tex., 361.)

No brief for the defendant in error has been furnished to the *Reporter.*

LINDSAY, J.—This suit was brought by the plaintiff in

error to recover a part of the consideration paid for a tract of land to the defendant in error, upon the alleged ground that it was an over-payment, or, rather, a payment made under a mutual mistake by both vendor and vendee. No actual fraud is alleged, or attempted to be set up and proved.

The plaintiff received a conveyance from the defendant for one-third of a league of land, set out by metes and bounds, and paid the full consideration, according to the contract, for that amount of land. Subsequently, however, by actual survey, it was found that there was a deficit in the land of two hundred and thirty-five acres, by reason of a conflict with another survey, covered by a superior, older, and paramount title. The plaintiff instituted this action to recover the excess of payment for the two hundred and thirty-five acres, which he alleged to be more valuable in quality than any like portion of the survey, and he therefore sought to recover an amount proportionate to that superior value.

The action was brought on the 29th day of January, 1859. The deed for the land was executed and delivered on the 1st day of April, 1852.

On the trial of the cause two questions were raised, and are made in the assignment of errors, and demand our consideration:

1st. Did the court err in excluding a deposition, taken by agreement of parties, in a former suit between the same identical parties, in relation to the same identical subject-matter?

2d. In reference to the statute of limitation, pleaded by the defendants, did the court err in charging the jury that the statute began to run from the date of the deed, and not from the discovery of the mistake?

Mistakes, as well as accidents and frauds, are certainly subjects of equitable jurisdiction, and courts will take cognizance of them as such. It is true, mistakes of law

generally, upon principles of public policy, are not suffi-
cient grounds for relief. A mere mistake of law, without
other considerations, and divested of all other circum-
stances, is no foundation for the interposition of the courts.
But there are certain mixed questions of law and fact, such
as ignorance of law, admixed with misrepresentation, im-
position, undue confidence, undue influence, mental imbe-
cility, or surprise, which may strip a party of any undue
advantage which he may seek to protect himself under, by
this general principle of the law.

Mistakes of fact, however, as laid down by Justice STORY,
as well as other elementary writers, where the fact is a ma-
terial one, of which the party was ignorant at the time of
the contract, are always "voidable and relievable in a court
of equity."

In this case there seems to have been an innocent and
mutual mistake of a very important fact by both parties.
The one thought, no doubt, he was selling and conveying
one-third of a league of land, and the other honestly
believed he was buying and getting a good title to that
amount of land from the exhibition of the muniments of
title to it by the vendor. This purchase was not what is
denominated a purchase in gross. It was for a definite and
specific amount of land, one-third of a league of land, and
is unlike the purchase of a tract of land with courses and
distances defined, and simply estimated to contain a pre-
scribed number of acres. Such a purchase would be
regarded as a purchase in gross. And if there should
turn out to be a deficit in the land, in such a case equity
would withhold any compensation and damages, because
the purchaser has the means afforded him at the time of
his contract to detect that deficit. By reasonable diligence
it was in the power of the purchaser to ascertain the fact.
If by culpable negligence he fails to do so, he will not be
relieved, because the law always aids the vigilant, and not
those who slumber over their rights. If the boundaries of

the land set forth in the deed did not contain the quantity of land declared to be sold, the purchaser would be entitled to no relief, because it was in his power to make the estimation and determine the matter for himself. Failing to do so, it would be an injury superinduced by his own culpable negligence, for which the vendor could not be held responsible. But such is not the case here. The quantity purchased was definite; the designated boundaries in the deed embraced that quantity, and the deficit in quantity was caused by the conflict and interference of a survey with an older and a better title, which was unknown at the time to both the contracting parties. In such cases the law does and should afford relief. Such relief has been usually afforded as incidents in suits for specific performance or the recision of contracts. But under our system this remedy may be had by a direct proceeding for compensation and damages.

I. Upon the question presented for our consideration, whether the court erred in the exclusion of the deposition taken by agreement of parties, in a former suit between the same identical parties, in relation to the same identical subject-matter, we may remark, that we cannot perceive the principle of law by which the court excluded this deposition.

It is laid down by Greenleaf, as well as other writers upon evidence, that all that is wanting in the use of a former judgment or a former deposition is mutuality between the parties. Yet the rule, he says, in regard to depositions, is applied with more latitude of discretion than in the case of judgments. A perfect identity of parties is not necessary in depositions. Philosophically considered, the essential matter is, had the opposite party a fair opportunity for the cross-examination of the witness upon the points involved in the controversy. If so, he ought not to be heard to object to the testimony, whether he availed himself of his right of cross-examination or not,

unless he can assail it by other testimony. In this case, the deposition was taken by agreement of parties. It is a presumption of law that he must have known what that witness would prove, and, if it were not true, he stood prepared to contradict it by better evidence. The introduction of this deposition was like the introduction of a living witness upon the trial, of which he was not bound to apprize the opposite party, because, when introduced, he had the right of cross-examination. But that right had already been exercised in reference to the deposition, or at least he had had an opportunity to exercise it when the consent was given to take it.

We know of no principle of the common law which would exclude the deposition. Nor are we advised of the existence of any statute of the state which demanded its exclusion. The act of the 20th December, 1836, (Paschal's Dig., Art. 3706,) declares that "the common law of England, as now practiced and understood, shall, in its application to juries and evidence, be followed and practiced by the courts of this republic, so far as the same may not be inconsistent with this act, or any other law passed by this congress."

We are not aware of any statute in this state inconsistent with the application of the common law made in this case. We are therefore of opinion that the court did err in excluding the deposition offered. As no statement is made by the judge in the bill of exceptions why the deposition was excluded, we must presume that the witness could not be personally produced, so as to get his testimony *viva voce;* and the opinion of the court was based upon the idea that the deposition was admissible under no circumstances.

II. Did the court err in charging the jury that the statute of limitation began to run from the date of the deed, and not from the discovery of the mistake? It must be borne in mind that the right sought in this proceeding is

an equitable right. It is not founded upon positive law; it is no breach of contract; it arises from no default of duty in the party defendant. But it is based upon the equitable principle that the defendant has got by the rule something which he ought not conscientiously to retain; that he has got something for nothing, arising out of the mutual and innocent mistake of both parties; that the holding on to the price of two hundred and thirty-five acres of land which the purchaser did not get by his purchase is unconscientious, and therefore ought to be adjusted by the principles of equity, and not by the rules of law. This case, therefore, must be tested by the principles of equity. It is said that equity acts by analogy to the rules of law. And wherever it acts upon cases where the rules of law are positive, then equity follows the law, according to a universally-acknowledged maxim in all such cases. But it is bound by no such rule of limitation where the law is silent. The law is not a forum of conscience, but of fixed and inflexible rules.

What principle of equity, then, will govern in this case? We must go to courts of equity to ascertain what rule is to govern in a matter so exclusively a thing of conscience and of equalizing justice. Justice STORY says, "the question often arises, in cases of fraud and mistake, &c., under what circumstances and at what time the bar of the statute of limitation begins to run. In general it may be said that the rule of courts of equity is that the cause of action or suit arises when and as soon as a party has a right to apply to a court of equity for relief. In cases of fraud or mistake it will begin to run from the time of the discovery of such fraud or mistake and not before." This is in consonance with reason and the true philosophy of remedial justice, and certainly ought to obtain in every forum where it is undertaken to be dispensed. The principle thus announced by American authority is fortified, too, by English precedent, by a jurist of a like enlightened sense of distributive justice. Baron ALDERSON maintains that "the

statute of limitation does not absolutely bind courts of equity, but they adopt it as a rule to assist their discretion. In cases of fraud, however, they hold that the statute runs from the discovery, because the laches of the plaintiff commences from that date, on his acquaintance with all the circumstances. In this courts of equity differ from courts of law, which are absolutely bound by the words of the statute." In the same connection he superadds, "mistake is in the same rule as fraud," which was then the special subject under his consideration. Thus it will be perceived by the highest authority and from the sources from which we discover the lights and the landmarks for our judicial guidance the doctrine is fully and distinctly recognized, and, as it were, authoritatively announced, that in cases of fraud and mistake the statute of limitation does not begin to run until the fraud or mistake (whichever may be the subject of judicial investigation) is discovered. We are, therefore, of opinion that the court erred both in excluding the deposition offered and in the charge to the jury, in which he instructed them that the statute of limitation began to run from the date of the deed of conveyance. Wherefore the judgment of the court is reversed and the cause remanded, with instructions that a new trial be awarded and conducted in conformity with the principles of this opinion.

REVERSED AND REMANDED.