## W. N. KELLEY v. THE STATE.

### No. 2770.   Decided March 23, 1904.

**1.—Obstructing Public Road—Plea of Former Acquittal.**

Where the court in its charge safeguarded the conviction of appellant of any offense of which he might have been convicted under the former information, there was no reversible error in striking out the plea of former acquittal, as the defendant's rights were not prejudiced thereby.

**2.—Collateral Attack.**

A judgment of a jury of review, which does not contain a recitation of notice, can not be attacked collaterally by a defendant who is charged with obstructing the public road which such judgment establishes.

**3.—Same—Estoppel.**

Where a defendant, charged with obstructing a public road was one of the original petitioners to lay out the road and was appointed one of the jury of review, although he did not act as such juror; and was also one of the petitioners asking for the change of said road after it was laid out, he is estopped from setting up want of legal notice to open up and lay out the road as a defense, aside from the rule of law that he is precluded by the judgment of the jury of review from doing it.

**4.—Same—Good Faith.**

Defendant, who was charged with obstructing a public road willfully. could not plead good faith, because he was not legally notified of the petition asking that the road be established, when he had actual notice of the various proceedings of the commissioners court with reference thereto and himself petitioned to have the road changed, and could not introduce testimony as to his and the belief of others as to the locus in quo of the road.

**5.—Same—No Order of Removal Required.**

Nor does the fact that, after the establishment of a public road, which defendant is charged to have obstructed, he may have placed his fence within the bounds of said road, and that the commissioners court had not authorized the removal of such obstruction, relieve him of liability for subsequently closing up said road by fencing it on the south and north ends of the sections of land it divided.

**6.—Same—Injunction Proceedings.**

Appellant, who was charged with willfully obstructing a public road. could not be permitted to introduce as evidence of good faith, and to contradict the charge of willfulness, the injunction proceedings with reference to said road begun subsequently to the time he obstructed said road.

**7.—Charge of the Court—Willful—Good Faith.**

Where the court in its general charge required the jury, in order to convict, to believe from the evidence that defendant's act of obstruction was willful, there was no error in refusing defendant's requested instructions as to willfulness, or his good faith.

**8.—Same—Road Designated.**

Defendant who was charged with obstructing a public road could not complain that the court refused his charge. that the jury must not consider the lines of the road as reported by the jury of view, but those actually laid out on the ground by the jury of review, when there is no question 'that he fenced the road at a point where it was designated by the jury of review and the court.

**9.—Same—All Obstructions Need Not Be Removed.**

It was not necessary to charge that before the public road which the defendant is alleged to have obstructed became a public road, all obstructions must be removed from it; even if it be conceded that part of said road was under fence, still that part which was open to the public for travel could not be obstructed.

**10.—Same—What Constitutes Public Road.**

When a road has been actually reviewed and laid out on the ground by a jury of view, appointed by and acting under authority from the commissioners court and their written report describing said road has been approved by said court, then the said road is a public one.

**11.—Same—Road Overseer.**

Appellant could not assert as a defense that the road which he was charged to have obstructed had not been opened up by a road overseer prior to the time he was alleged to have obstructed it, when he had placed obstructions thereon after the road had been laid out, first partially obstructing and then completely obstructing the road.

**12—Statement of Facts—Affidavits.**

Affidavits filed regarding the statement of facts approved by the trial judge can not be considered.

Appeal from the County Court of Floyd. Tried below before Hon. A. B. Duncan.

Appeal from a conviction of obstructing a public road; penalty, a fine of one cent.

The following statement of facts is taken from appellant's brief and is substantially correct:

The State read in evidence the order of the commissioners court upon the hearing of the application of W. M. Chandler and twenty-seven others for a new road to be known as the Sand Hill and Lockney road and appointing a jury of view. The report of the jury of view and an order of court approving the same and establishing the road, assessing damages and ordering the said road to be opened up and worked.

F. H. Ford testified for the State: "I live about three-fourths of a mile south of defendant. The Sand Hill and Lockney road runs a few hundred yards east of my house and thirty or forty steps east of the defendant's house. There is fence and gate across said road at the southeast corner of section 56, the place on which the defendant lives. There is also some fence and a gate across said road at the northeast corner of same section. I passed along said road at these points with my freight team on my way to the railroad a few days prior to the 3d day of March, 1902. The south gate was closed but the north gate had not been built at that time. I returned on same route between sundown and dark on the 3d day of March, 1902, and the north gap in said fence was closed by a gate and some fence being erected across same. I don't know who closed it. This was in Floyd County, Texas, on or about the 3d day of March, 1902. The defendant and I are not on good terms. We don't speak. I spoke to him until he quit speaking and then I quit. I have no hard feelings against defendant. I never told at any time that if the county did not break Kelley I would finish him. I never told any one that I intended to make this trouble break Kelley up. I never told Roy Bruner that when the county got through

with Kelley that I would finish him. I never told Roy Bruner to hitch on that gate with his freight team and pull it out."

M. F. Mickey testified for the State: "I live about ten miles west of here. I know the defendant. I live southwest of the defendant's place. The Sand Hill and Lockney road runs along the east side of the defendant's home place and something like 100 feet east of his residence. On Sunday, March 2, 1902, I went from home to Lockney and traveled said road. The gate at the southeast corner of defendant's section 56 was closed, but there was no gate or other obstruction on said road at or near the northeast corner of said section on that date. The road at this place runs north and south. There was a wire fence which was built from the east up to within about thirty or forty feet of said road leaving a space between the end of said fence and defendant's field fence of something like about sixty or seventy feet, I suppose. The road was entirely unobstructed at said point on said date. I returned from Lockney going home over said road on Monday, March 3, 1902, passing the point where said road passes the northeast corner of defendant's home section 56, about 9 o'clock a. m. on said day. A man was at work building a gate on said road. I did not know who he was. I was along there afterwards and said road was obstructed by a gate and fence and the opening in the fence at said point was entirely closed with wire fence and plank gate. When I returned home on March 3, 1902, the gate posts of said gate were up, leaving a space for a gate about ten or twelve feet wide or something about sixteen feet of space from the west gate post to defendant's field fence. Was open when I went up on Sunday, was closed with a wire fence when I came back on Monday, and the space from the east gate post to the fence line on the east which was open when I went up was closed when I came back and the man was making the gate as I came along. I don't know who it was that put up the gate and fence. The defendant lives about the middle, north and south, and near the east line of section 56. Said road was obstructed at or near the northeast corner of defendant's section 56 subsequent to March 2, 1902."

J. S. Pickel testified for the State: "I live in Floyd County, Texas. I know the defendant, W. N. Kelley. I am acquainted with the Sand Hill and Lockney public road. I was one of the jury who viewed and laid out said road. We aimed to view and lay out said road to run on east line of section 56 owned by defendant. We intended to place said road on said line sixty feet wide—thirty feet on each side of said line. We viewed and laid out said road on a line running east of defendant's private residence, something like forty yards east of said house I suppose. We thought we were laying out said road on section lines at the time. The road as actually laid out by us did not run inside of defendant's field nor yard. I do not know of my own knowledge whether or not the east line of defendant's field fence is on his section line, but a survey made by Mr. Foard subsequent to laying out said road places the

section lines a little east of the road as laid out by us. The road as actually laid out by us is on the outside of his field fence and the out-, side of his orchard. The defendant was a member of said jury of view and we notified him to meet us to view out said road but he failed to come.

"I don't know where a correct survey would place the dividing line. between sections 55 and 56, but at the time we viewed out the said, road we supposed the fence on the east side of defendant's section 56 to be set back so as to leave sufficient space for the road. I don't like Kelley. I don't speak to him. I don't know of my own knowledge who placed the obstructions on said road.

"I heard the defendant say during the session of the commissioners court in November, 1901, that he was going to fence the Sand Hill and Lockney road. He was considerably worked up. I understood he was going to fence up said road because he thought it to be an illegal road. I supposed that from his talk."

John Wilson testified for the State: "I live ten miles west of here. I know the defendant. . I heard him say he was going to fence the road. This was during a term of the commissioners court in November, 1901. He was talking about the Sand Hill and Lockney road and was considerably worked up over the matter.

"He did not say in that conversation that he was talking about the Sand Hill and Lockney road but was with a petition to change said road and I thought that was the road he was talking about. He said that he, defendant, was going to fence said road because he believed same to be illegal or something to that effect."

W. H. Burrows testified for the State: "I worked for the defendant in the year of 1901 and 1902. I began about April, 1901, and worked about one year for him. I helped build a fence for the defendant beginning on the south line of section 56, running east to southeast corner of same. Thence north to northeast corner of same. Thence west to northeast corner defendant's field fence in the northeast corner defendant's home section, 56. We commenced this fencing in the early part of the year 1902 and built on around until we got in a short distance, something like fifty or sixty feet perhaps, of the northeast corner of defendant's field fence. Then we stopped a few days, something like two or three weeks I suppose. There is a road running along a short distance east of defendant's house. We stopped building the fence before we reached said road and waited some two or three weeks before fencing across said road. The defendant helped me on the fence most of the time until we got where we stopped near the road. I afterwards, at the instructions of defendant, built the fence and gate across the road for which he paid my regular wages. I put the gate right in the center of the road and built the fence up to and attached it to each side of the gate. On the west side of gate, some fifteen feet from the gate, the defendant's field fence begins and con-

tinues on west about a half mile without any opening whatever. The fence on east side of the gate attaches to the gate and continues on east about one mile without any opening. I put this fence and gate across said road some time in the early part 1902 at the instance and under directions of defendant. I do not remember the exact date. I can not even approximate it."

The State then introduced an entry of school land record of Floyd County of an award to defendant of section 56, block G, Cert. 19, A. B. and M., date October 8, 1898, and a deed from deed records of said county from C. M. Martin to defendant of section 55, block G, A. B. and M., dated June 3, 1900. The State then read in evidence petition of W. M. Kelley and seven others for change in Sand Hill and Lockney road, date November 11, 1901.

The State rested and defendant read in evidence original petition of W. M. Chandler and twenty-seven others for the Sand Hill and Lockney road, date June 6, 1899.

Defendant then offered commission to himself as a juror of view and also notice to him as land owner to put in his claim for damages.

Roy Bruner, for defendant, testified: "I am acquainted with witness F. H. Ford. We have freighted some together. He has talked to me a great deal about Kelley fencing the Sand Hill and Lockney road. Ford told me that when the county got through with Kelley in the injunction suit, if they did not break him that he, Ford, intended to try him a round. That he, Ford, intended to make it cost Kelley everything he had, or some such talk. He said something about like, that some one ought to hitch onto that gate in the Sand Hill and Lockney road and pull it off the road. I don't remember distinctly just what he did say. I said about as much about it as he did."

W. N. Kelley for himself testified: "I am the defendant in this case. I own sections 55 and 56 along proposed route of the Sand Hill and Lockney road. I instructed the witness Will Burrows to place a gate on the north string of fence at the northeast corner of section 56 about the 3d day of March, 1902. There is a fence between sections 55 and 56 the full length of said sections running north and south. The fence is near the line between said sections. In fact the line is about six feet east of the fence. My private residence is about half way of sction 56 north and south, and about eighty-five or ninety feet from the east line of the said section. The Sand Hill and Lockney road was viewed out and run along the dividing line between section 55 and 56 and to be thirty feet on each side of said line. The gate that I had put in at the northeast corner of section 56 is about ten feet wide and is about twenty-five feet east of the divided fence between section 55 and 56 and is about nineteen feet east of land line between said two sections. I received a notice from the jury of view to put in my claim for damages by reason of the road running across section 56, through mail, two or three days before the 28th of October, 1899, which date was set

for said jury to meet at the art studio at Lockney. I never put in my claim for damages before said jury because I did not know from the notice how much of my land was wanted for the road, and because I did not have time to get up my claim properly, and would have to get a lawyer to get my claim for me. I thought the jury of view had to lay out the road as petitioned for along the west line of section 56 and did not think it would amount to anything. The notice which I state I received through the mail from the jury of view is the one I have introduced as evidence.

"In January, 1902, when I commenced fencing section 55 only a part of section 56 was fenced and there were roads running across my land up to the time I commenced fencing in 1902, to wit:

"No road overseer has ever warned out any hands to work the Lockney and Sand Hill road since it was viewed out and no work has been done on said road. It has needed work in several places very bad, but has never had any. No road overseer or any other person ever notified me to remove my obstructions from said road. I got up a petition to change said road before I fenced it, because I was afraid I would be prosecuted if I fenced it without first getting it changed. I took said petition and went around to see the land owners and got eight signers; stuck up proper notices and presented said petition to the Commissioners Court of Floyd County, Texas, and they refused to grant said petition."

*Chas. E. Coombes, J. B. Bartley, Taylor & Coombes,* and *W. A. Hudson,* for appellant.—The special plea of former acquittal presents an issue of fact to be tried by the jury. The jury should render a special verdict therein finding whether the plea be true or untrue and it is error for them to fail to do so. Code Crim. Proc., arts. 561, 563, 579, 750; Burks v. State, 24 Texas Crim. App., 326; Smith v. State, 18 Texas Crim. App., 329.

When the former acquittal pleaded was had in the same tribunal as the case being tried, the court should take judicial cognizance of such

proceedings had in the former prosecution as are matters of record. Whether the same evidence which is necessary to support the second prosecution would have supported the first can only be determined after hearing the evidence of both prosecutions, and then only by the jury under proper instructions from the court. The court can not take judicial cognizance of proof dehors the record and say without hearing the evidence that the offense charged in the former prosecution is not identical with the one at bar. If the plea of former acquittal be good on its face it is error for the court to strike it out upon the State's general denial in the form of an exception thereto. Tribble v. State, 2 Texas Crim. App., 424; Fehr v. State, 36 Texas Crim. App., 93; Rudder v. State, 29 Texas Crim. App., 262; Quitzow v. State, 1 Texas Crim. App., 47; Elehash v. State, 35 Texas Crim. Rep., 599; McCullough v. State, 34 S. W. Rep., 753.

In a prosecution for obstructing a public road two things are essential to support a conviction. First, a public road must have been obstructed; and second, it must have been willfully done. If the defendant honestly believed he had a legal right to fence the road, that the road was illegal, and he had reasonable ground to so believe, it can not be said that he willfully obstructed a public road. No one but the defendant can testify as to what he believed in regard to the illegality of the road nor what his grounds were for entertaining such belief. The law gives him the right to testify in his own behalf and to introduce such testimony as would tend to rebut the State's evidence and as bearing upon the issue as to whether he acted with evil intent, legal malice or without reasonable ground to believe the act to be lawful. Any evidence bearing even remotely upon this issue would be admissible. His own testimony as to what he believed and why, would bear more directly upon this issue than any other evidence in his whole line of defence. Penal Code, art. 480; Myers v. State, 36 S. W. Rep., 255, 37 Texas Crim. Rep., 460; Lensing v. State, 45 S. W. Rep., 572; Meers v. State, 16 S. W. Rep., 653; Parson v. State, 9 S. W. Rep., 490; Laroe v. State, 17 S. W. Rep., 934, 30 Texas Crim. App., 374; Shubert v. State, 16 Texas Crim. App., 645; Murphy v. State, 4 S. W. Rep., 906; Owens v. State, 5 S. W. Rep., 830; Johnson v. State, 14 S. W. Rep., 396; Drinkoeter v. State, 16 Texas Crim. App., 72; Sneed v. State, 28 Texas Crim. App., 56; 9 Am. and Eng. Enc. of Law, 368; Vogt v. Bexar County, 5 Texas Civ. App., 272.

Where, as in this case, intent is the essence of the crime charged, and if there was no evil intent or legal malice there was no guilt, it necessarily follows that the testimony of the defendant direct as to his intent is competent, and it is not incompetent because it comes from the mouth of the defendant. Code Crim. Proc., art. 770; Berry v. State, 17 S. W. Rep., 1080, 30 Texas Crim. App., 423, for a discussion of the point and citation of authorities.

The pleading in the injunction suit should not have been excluded

by the court upon the State's objection thereto that the same were "irrelevant and immaterial," because that is insufficient to properly raise an objection thereto. Hamblin v. State, 50 S. W. Rep., 1019; Benson v. State, 5 Texas Crim. App., 450.

Before a road established by an order of the commissioners court upon the report of a jury of view can become of such a public character as that one can be punished for obstructing the same, it must appear from the evidence that such road had been actually opened up on the ground and cleared of obstructions, or opened, used, and worked as a public road. Sayles' Rev. Stats., arts. 4683, 4694, 4695, 4713; Day v. State, 14 Texas Crim. App., 26; Meyer v. State, 37 Texas Crim. Rep., 460; Rankin v. State, 8 S. W. Rep., 932; Kennedy v. State, 25 Texas Crim. App., 694; Franklin County v. Brooks, 68 Texas, 679.

The Sand Hill-Lockney road must have become a public road, at least in the manner defined by the court, prior to the time appellant is charged with obstructing the same before he could be legally punished therefor. It is not a violation of law to obstruct a road used by the public when the said road so used is not the road adopted by the jury of view and established by the court. Pierce v. State, 22 S. W. Rep., 587. Whether the road as obstructed was a public road is a question of fact to be found by the jury. Hall v. State, 13 Texas Crim. App., 269.

*Howard Martin,* Assistant Attorney-General, for the State.

HENDERSON, Judge.—Appellant was convicted of obstructing or causing obstructions to be placed on a certain public road, and his punishment assessed at a fine of one cent, and prosecutes this appeal.

Appellant's first bill of exceptions calls in question the action of the court striking out his plea of former acquittal. His plea properly sets out the proceedings, showing an acquittal of defendant for the alleged offense of obstructing the same public road on the 14th day of January, 1902. The affidavit was filed on January 22, 1902, and the information was filed shortly thereafter. It further shows a judgment of acquittal on account of said alleged offense. The information in this case was filed on June 6, 1902, and charged an offense of obstructing the said road on March 3, 1902. While it is true that, as to the last charge on which this trial was had, the State was not bound to an offense charged on March 3d, the date alleged, but could have gone back of that so as to have covered the time alleged in the former information, yet it is true that in the first information the State could not have gone beyond the time of making the affidavit, which, as stated, was January 22, 1902. While perhaps the court was not originally justified in striking out the plea of former acquittal, but when we look to the proof in this case, which is uncontroverted on the question, the offense here proven occurred on March 3, 1902, and the court by its charge safeguarded the conviction of appellant of any offense of which he might have been con-

victed under the former information. So we fail to see how appellant's rights were prejudiced by the action of the court striking out said plea.

Appellant questions the action of the court, because he says that the notice of the jury of review served on him requiring him to attend at the laying out of the road and to make his claim for damages was served by mail, and only came to his hands three days before the sitting of said jury of review. He insists that if this character of service by mail was sufficient, he should have had five days notice under article 4691, Revised Civil Statutes. Appellant's contention would be true, if he was not otherwise bound by the judgment. The jury of review was a court of competent jurisdiction with reference to laying out the road, and as to allowing damages therefor. The judgment here establishing the road predicated on the report of the jury of review does not contain any recitation of notice. Appellant himself projected this matter, and it seems testified, without objection, that the notice by mail only came to his hands three days before the adjudication establishing the road. In accordance with the rule laid down in Fitsch v. Boyer, 51 Texas, 336, it is held that a domestic judgment of a court of competent jurisdiction upon a subject matter within the ordinary scope of its power and proceedings is entitled to such absolute verity that in a collateral action, even where the record is silent as to notice, the presumption, when not contradicted by the record itself, that the court had jurisdiction of the person also, is so conclusive that evidence aliunde will not be admitted to contradict it. Moreover, here appellant was one of the original petitioners for the road, and was also appointed one of the jury of review, although he did not act. True, his particular section of land was not called for in his petition, but he applied for the road between the particular points named in the order, which ran through his community and from his neighborhood to the town of Lockney; and he contends he understood it was to run on the west side of his land and not on the east as ultimately adopted; that he did not care as to it running around his west boundary line of section 56, as it would not injure him. However, he must have known of the action of the commissioners court in laying out and adopting the road as reported by the jury of review, but he appears to have remained quiescent until November 11, 1901, when the record shows he got up a petition to the commissioners court, which he signed with seven others, to change the road from his east boundary line of section 56 to his west boundary line. This is a direct recognition of the road as established on the east side of his section 56; and it occurs to us is in the nature of an estoppel on him. In his evidence he says: "That he got up this petition to change said road before he fenced it, because he was afraid he would be prosecuted if he fenced it without first getting it changed; that he took said petition and went around to see the landowners, got eight signers, stuck up the proper notice, and presented said petition to the Commissioners Court of

Floyd County, Texas, and they refused to grant said petition." We hold in the first place that he could not question the action of the commissioners court in establishing said road in a collateral proceeding by showing a want of notice. We hold, even if it be conceded that he could question the action of the commissioners court in establishing the road by showing aliunde the record that notice was not served on him, that with full knowledge of the establishment of said road in the locus in quo, he subsequently recognized and adopted such road by petitioning the commissioners court to change said public road. See Crouch v. State, 45 S. W. Rep., 578; Allen v. Parker, 57 S. W. Rep., 703.

If we are correct in holding as above, that appellant was bound by the action of the commissioners court in establishing said public road along his east boundary line, making a public road of the first class sixty feet wide along his line between sections 55 and 56, then it was not competent for him to introduce evidence as to what others may have advised him in regard to fencing up said road. His mere alleged belief in the face of the facts would not evidence his good faith or contravene the idea of his willfulness in stopping up said road. Crouch v. State, supra. He unquestionably knew, when he undertook to fence it up at both ends, that it had been laid out and established by the commissioners court as a public thoroughfare. Nor does the fact that after its establishment he may have placed his fence within the bounds of said road, and that the commissioners court had not authorized the removal of said obstruction, relieve him of liability for subsequently closing up said road by fencing it on the south and north ends of his said sections 56 and 55.

Nor, in our opinion, could appellant introduce as evidence of good faith, and to contradict the proposition of willfulness insisted on by the State, the injunction proceedings with reference to this road, sued out on March 10th, which was subsequent to his obstructing said road on the 3d of March. We do not believe it was necessary for the court to give appellant's special requested instructions as to "willfulness." The court in the main charge required the jury to believe that the act was willfully done before they could convict appellant.

Nor was it necessary for the court to charge on appellant's good faith in the matter. As was said in Crouch's case, supra, "We hold that the fact of his fastening up said gate, after he knew it had been established as a public road, etc., was under the circumstance willful," etc.

Appellant objected to the following portion of the charge of the court: "You are further instructed that, if you find from the evidence the road in question was reported by the jury of review to follow certain land lines, but that the road laid out on the ground by the jury of review did not in fact follow such land lines, then you are instructed that the true public road is the one actually laid out on the ground by the jury of review, and not the land lines or the route delineated or described in the report of the jury of view." We do not recall any evi-

dence that authorized this particular instruction, and we fail to see how it could have injured appellant, inasmuch as there is no question but that he closed the road at a point in said public road designated by the jury of review and the commissioners court. Appellant himself says, "that the Lockney and Sand Hill road was viewed out and run along the dividing line between sections 55 and 56, and is thirty feet wide on each side of said line." He says that he put the gate at the north corner of section 56, which is about twenty-five feet east of the dividing line fence between sections 55 and 56, and is about nineteen feet east of the land line between said two sections.

We believe that the court under the facts and circumstances of the case correctly instructed the jury, "that a public road, within the meaning of the law, is one that has been actually reviewed and laid out on the ground by a jury of view, appointed by and acting under authority from the commissioners court, and that their written report describing said road has been approved by such commissioners court, and recorded in the minutes of such commissioners court." Nor does it occur to us that the subsequent charge of the court, after this definition of a public road, to the effect that if they believed appellant willfully obstructed and injured, etc., a public road, etc., to find him guilty, and that portion of said charge with reference to the date the jury must confine their investigation, to any date not earlier than 23d day of February, A. D. 1902, and not later than the 27th of June, 1902, is not subject to criticism on the ground that it deprived appellant of any right under his plea of former acquittal. As we understand the charge of the court it conserved his right in this particular. The charge could not be regarded as an interference with appellant's injunction proceedings, inasmuch as there is no pretense that the obstruction was placed there later than the 3d of March.

This portion of the charge is also objected to: "If you believe beyond a reasonable doubt that the road in question, leading from the Sand Hill schoolhouse to the town of Lockney, had been actually reviewed and laid out on the grund by a jury of view, appointed by and acting under authority from the Commissioners Court of Floyd County, Texas, and their written report describing said road had been approved by said commissioners court, you will find that said road was a public one." We believe this is a proper method authorized by law of establishing a public road. We do not believe it was necessary for the court to tell the jury that before it became a public road all obstructions must be removed from it. Even if it be conceded in this case that a part of said road was under fence, still that part of the road which was open to the public for travel could not be obstructed. But we do not believe the facts show that any part of the road where the obstruction was placed was under fence before the establishment of said public road. As we read the record it was placed there a good while after said road was established by the commissioners court. That is, appellant placed his line

of fence along his section 56 at the point of the alleged obstruction, in the early part of January, 1902. It is not pretended that this obstructed the entire road, but the obstruction for which he was here convicted was for fencing up the balance of the road and completely preventing travel on March 3, 1902. We note in this connection that appellant complains that the court did not give a special requested instruction to the effect that before the jury would be warranted in convicting defendant for obstructing the Sand Hill and Lockney road, they must believe from the evidence that said road had been opened up on the ground by the road overseer, or some person under the direction of the commissioners court, prior to the time defendant obstructed said road, if he did obstruct the same," etc. As stated, when the road was laid out there was no necessity for ordering obstructions to be removed, inasmuch as appellant placed the obstructions there subsequently; that is, he built his line of fence partially along the public road, including some of it long after the road had been laid out. But it seems he left enough open way for the traveling public. However, in March he fenced up the balance, absolutely closing out travel. We think he was indictable both for placing his fence along the public road in January, and this may have been involved in the previous prosecution. He was certainly subject to prosecution for closing up the remaining portion of the road in March.

With reference to the affidavits filed regarding the statement of facts approved by the trial judge, it may be stated they can not be considered, as this is not the method provided by law for making up statement of facts.

*Affirmed.*

[Motion for rehearing overruled without written opinion.—Reporter.]