**EL PASO ELECTRIC CO. v. LEEPER.**

No. 2579.

Court of Civil Appeals of Texas. El Paso.

Oct. 15, 1931.

Rehearing Denied Nov. 5, 1931.

Hunter, Brown & Brooke, of El Paso, for appellant.

Knollenberg & Cameron, of El Paso, for appellee.

WALTHALL, J.

This is a personal injury suit. Augusta Leeper sued the El Paso Electric Company for damages resulting to her from injuries received as the result of the automobile, in which she was riding on the night of October 30, 1928, driven by Lieut. Nutter, colliding with a transmission line pole of the electric company, and in which collision Miss Leeper was thrown out of and some distance from the automobile and injured, and the automobile demolished.

Lieut. Howze and Mrs. Howze, riding on the back seat of the automobile, were thrown out of the automobile and Mrs. Howze killed.

The issues made by the pleadings are sufficiently indicated by the special issues submitted to the jury on the trial. On the issues submitted the jury found:

1 and 2. The defendant, electric company, was negligent in placing or maintaining its transmission line pole complained of at the place it was, and that such negligence was the proximate cause of the accident complained of.

3 and 4. Lieut. Nutter drove the automobile at a rate of speed in excess of 35 miles an hour, and that same was a proximate cause of the accident complained of.

5. Lieut. Nutter and plaintiff, Augusta Leeper, at the time of the accident, were not upon a joint expedition in which they were jointly and mutually interested, and in which they had an equal right, express or implied, to direct and control the conduct of each other in the operation of the automobile.

6, 7, and 8. Lieut. Nutter, at or just before the time of the accident, drove the automobile at a fast, dangerous, and immoderate rate of speed, and was negligent in so doing, and such negligence was a proximate cause of the accident complained of.

9. The driver of the car drove the same at such rate of speed as not to endanger the life and limb of persons and the safety of property.

11. The jury assessed plaintiff's damages at the sum of $7,500.

In response to special issues requested by appellant and submitted, the jury found: The defendant electric company's transmission line pole was erected in such proximity to

the traveled portion of the highway that the defendant, in the exercise of ordinary care, should have reasonably foreseen or anticipated that some such accident as happened in this case would probably result to persons traveling the highway in, the exercise of ordinary care, and that the location and position of defendant's pole was a proximate cause of the collision and injuries to plaintiff, Miss Leeper. The defendant's pole was so erected as to endanger the safety of persons riding in vehicles proceeding along the highway in the exercise of ordinary care. The way and manner in which the automobile was being operated, under the circumstances prevailing just previous to the collision, was not the sole proximate cause of the collision. To the question, "Do you find from a preponderance of the evidence that the collision in which Miss Leeper was injured was not an unavoidable accident? Answer yes or no," the jury answered, "Yes."

On the answers as above the court entered judgment for the plaintiff, and for the amount found. Defendant's motion for a new trial was overruled, to which ruling defendant duly excepted and prosecutes this appeal.

### Opinion.

Appellant submits that the negligence of Lieut. Nutter in ·driving the automobile, as found by the jury, under the undisputed evidence which showed that Lieut. Nutter was driving the car which Miss Leeper had borrowed from her mother—Lieut. Nutter was Miss Leeper's agent in driving the car,· and his acts and negligence were imputable to Miss Leeper, and for that reason she should not recover. Appellant also submits that the undisputed evidence showed that Lieut. Nutter was invited to a dance by Miss Leeper; that she borrowed her mother's automobile to be used in taking herself, Lieut. Nutter, and Lieut. and Mrs. Howze to the dance; that Miss Leeper turned over the automobile to Lieut. Nutter to drive in going to the dance; that, therefore, Lieut. Nutter. was Miss Leeper's agent, and his negligence, as found by the jury, was her negligence, and for that reason she should not recover. We will discuss the two propositions together.

If the evidence was undisputed, as stated in the propositions, to the effect that Lieut. Nutter was Miss Leeper's agent in driving the automobile at the time and place of the accident, the negligence of Lieut. Nutter would be her negligence and would defeat her recovery.

Without quoting the evidence, two facts are undisputed: The automobile belonged to Miss Leeper's mother, Mrs. George Wallace, and Lieut. Nutter was driving the automobile during the entire time the parties were occupying and using·the car, and at the time of the accident.

Miss Leeper testified:

"Lieut. Nutter came by for me at my home in the Wallace Annex. He came in his own car to my house, a small one-seated car. * * * My mother (Mrs. Wallace) was there. * * * When we started to go we didn't go in this small car of Lieut. Nutter's because we all wanted to go together, the four, the Howzes and Lieut. Nutter and I wanted to go together. If my mother would let me have her car, we would all go together."

In question and answer: Question: "And she let you have the car?" Answer: "Yes sir."

Proceeding: "When we started to get in the car Lieut. Nutter took the wheel. He drove all the time until the time of the accident, I didn't do any driving. When we left our house mother was with us; she was going to Mrs. Kettler's on Montana (street), in the 1400 block."

On cross-examination witness testified: "This car belonged to my mother. As to who suggested using that car that night * * * she (Mrs. Howze)·said, 'I wish we could all go together'; I said, 'I will ask mother if we can have our car', and when Lieut. Nutter came mother said we could have her car."

Question and answer: Question: "You asked your mother if you could use her car and she agreed to that?" Answer: "Yes."

Then proceeding: "As to who requested Lieut. Nutter to drive, well, I don't know that he was requested to drive. It was sort of by common assent, he always drove. Whenever I was with him in that car, I always let him drive. * * * I have driven a car a good deal."

Mrs. George Wallace testified: "Augusta Leeper is my daughter. The car in the accident was my car. * * * They left my house about 9:30 (P. M.) and I went with them. I turned this car over to Lieut. Nutter. When we left the house and got into the car, he took the wheel. I went with them to the 1400 block on Montana (street). * * * As I got out of the car I said goodbye, have a good time, and take good care of my child. * * * I had been accustomed to letting Augusta and Lieut. Nutter drive my car. Lieut. Nutter and Augusta, upon other occasions, had driven the car with my consent. I loaned it to them whenever she requested. She asked me to let them have that car that evening. It was at Augusta's request that I let them have the car."

The point of appellant's contentions, under the above evidence, is that the negligence of Lieut. Nutter in driving the car is imputed to Miss Leeper, for the reason that she had borrowed the car from her mother and had turned the car over to Lieut. Nutter to drive,

thus making him her agent in driving the car.

One view of a portion of the evidence might lead to that construction. It is true that Mrs. Wallace, at the request of Miss Leeper, gave her consent to the use of the car for that occasion. Her expressions, however, were: "She asked me to let them have that car that evening. It was at Augusta's request that I let them have the car." It seems clear that under Mrs. Wallace's evidence the use of the car was let "to them," meaning the four who were to occupy the car on that occasion, rather than to any one of them. The crucial point, as we view it, however, is not so much as to who requested the use of the car, or to whom she let it, but rather to whom did she direct to have control of the car to be driver. She said: "I turned this car over to Lieut. Nutter. When we left the house and got into the car, he took the wheel." The above becomes pertinent in considering whether, at the time of the accident, Miss Leeper and Lieut. Nutter were upon a joint expedition at the time of the accident. In submitting that issue the court charged: "Occupants of a conveyance are supposed to be on a joint expedition where they have not only a joint interest in the object and purpose of the enterprise, but also an equal right, express or implied, to direct and control the conduct of each other in the operation of the conveyance."

█ The jury found that Miss Leeper and Lieut. Nutter were not upon a joint expedition, necessarily finding under the evidence that Miss Leeper did not have an equal right with Lieut. Nutter to direct and control the operation of the car. The rule is well established in this state that in passing upon the sufficiency of the evidence to sustain a verdict the courts must look to all of the facts and circumstances and the evidence favorable to the verdict. Cartwright v. Canode, 106 Tex. 502, 171 S. W. 696. The evidence shows that the parties were going some distance through and out from the city of El Paso on a rainy night, and to us it seems natural that Mrs. Wallace would want to intrust the operation of the car to the one more directly responsible for the safety of her daughter. However, her reason for turning the car over to Lieut. Nutter is not stated, but she did caution him to "take good care of my child."

█ The evidence is sufficient to justify the submission of the issue and to sustain the jury's finding.

█ The jury found that the electric company "was negligent in placing and maintaining the pole at the place it was." The objection to the submission of the issue was that it was too general, and did not confine the jury to the allegations of the petition in stating the facts as to the location of the pole, and the reasons stated that made it dangerous to be placed where it was.

We think there was no affirmative error in submitting the issue as it was.

The court gave a special issue requested by appellant as to the erection of the pole in its relation to the traveled portion of the highway, on which the jury made a finding against appellant, and which we think relieved the error in the main charge, if any there was.

█ The court refused to submit requested special questions inquiring whether the rate of speed and the condition of the weather caused the driver of the car to lose control of the car, and whether, if the driver did lose control of the car, that was the proximate cause of the collision with the pole. Appellant submits that the requested issues should have been submitted as bearing on the question of unavoidable accident.

The court heard all the evidence and submitted the ultimate issue of unavoidable accident. The fact sought to be submitted was only an evidentiary fact. No error is shown.

█ The undisputed evidence showed that the pole in question was some distance from the edge of the traveled or paved part of the highway on either side, and some twenty feet from the center of either of the roads, but was within the right of way of each of the highways. If we understand the contention of appellant, it is to the effect that because there was ample room on both sides of the pole for the passage of vehicles, and the location of the pole did not interfere with or impede traffic, the answers of the jury to its special issues, finding against appellant, was contrary to and against the weight of the evidence; in other words, no negligence is shown as a matter of law. Article 784 of our Penal Code makes it a misdemeanor to willfully obstruct in any manner whatever any public road or highway.

In 29 C. J., under the subject of what constitutes obstructions to highways, p. 616 et seq., it is said one is not justified in obstructing a highway because he leaves sufficient room for the passage of the public and refers to many cases in note, including Kelley v. State, 46 Tex. Cr. R. 23, 80 S. W. 382. It is there said that the same is true of any object placed close to the roadway constituting a present source of danger.

It is said in Robinson v. State (Tex. Cr. App.) 44 S. W. 509, in a prosecution for obstructing a second class highway, that, "although every particular part of the road may not have been traveled by the public, each and every part of the same was a part of the public thoroughfare, and appellant had no right to infringe upon it, though the traveled part of the road may not have lain immediately over the portion encroached upon by appel-

lant." While the commissioners' court is vested by law with a wide discretion in the matter of opening and establishing public roads, it cannot transcend the powers granted. We think it may not in this instance give appellant the right to obstruct the road by the erection and maintenance of the pole within the right of way of the roads in question.

With the facts undisputed that the pole was within the right of way of the roads, it cannot be successfully contended that the finding of the jury is not supported by the evidence.

█ The remaining assignment complains of the court's refusal to permit Lieut. Nutter to testify that he would have received suggestions from Miss Leeper and would have obeyed her instructions in the matter of driving the car had she given any. Witness would have stated in substance that the car was under his control, but that, as an act of courtesy, he would have taken instructions from Miss Leeper had she given any. We think no error is shown in excluding the evidence. The fact at issue was Lieut. Nutter's right or authority to drive or control the operation of the car, and not what he would have done under circumstances not present.

We have not discussed each point separately, but our view is expressed in points discussed.

We have concluded no reversible error is shown, and the case is affirmed.